# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JOE SAENZ, *on behalf of V.S.*,

    Plaintiff,

v.
                               Civ. No. 18-954 GBW/CG

BOARD OF EDUCATION OF SILVER
CONSOLIDATED SCHOOLS, *et al.*,

    Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT NEW MEXICO PUBLIC EDUCATION DEPARTMENT'S MOTION TO DISMISS

This matter comes before the Court on Defendant New Mexico Public Education Department's ("NMPED") Motion to Dismiss. *Doc. 12.* Having reviewed the motion and attendant briefing (*docs. 18, 24*), having considered oral argument on the matter (*doc. 35*), and being otherwise fully advised, the Court hereby GRANTS in part and DENIES in part NMPED's Motion to Dismiss for the reasons described below.

### I.    PROCEDURAL POSTURE

This case stems from allegations brought by Plaintiff regarding his son's education in the Silver Consolidated Schools ("SCS") district in Silver City, New Mexico. *Doc. 1.* On April 19, 2018, Plaintiff filed a request for an Individuals with Disabilities Education Act ("IDEA") due process hearing against SCS and NMPED, alleging denial of a free and appropriate public education ("FAPE") to his son, V.S. *Id.*

at 4. NMPED appointed a due process hearing officer ("DPHO") and filed a motion contesting the jurisdiction of the DPHO to hear claims against NMPED. *Id.* at 5. Particularly, the motion sought dismissal on the basis that the local educational agency ("LEA"), SCS, was the sole entity responsible for the provision of a FAPE to V.S, and that NMPED, as the state educational agency ("SEA"), was not a proper party. *Id*. The DPHO granted NMPED's motion and dismissed NMPED on May 16, 2018. Thereafter, the DPHO conducted a four-day due process hearing in Silver City in August 2018. *Id.* On September 12, 2018, the DPHO issued a final written decision, holding that SCS had denied V.S. a FAPE for two school years and ordering remedy. *Id.*

Plaintiff, on behalf of V.S., filed suit against the Board of Education of Silver Consolidated Schools and NMPED in this Court on October 12, 2018, bringing claims under the IDEA and Section 504 of the Rehabilitation Act ("Section 504"), and seeking attorney's fees and costs. *Id*. at 19-20.[1] On December 14, 2018, NMPED filed a Motion to Dismiss for failure to state a claim. *Doc. 12*. The Motion was fully briefed on January 10, 2019, *doc. 24*, and the Court heard oral argument on the Motion on January 31, 2019, *doc. 34*. The Motion is now before the Court.

---

[1] Because NMPED's Motion to Dismiss only addresses claims brought against NMPED, this Order will only discuss claims and facts relevant to NMPED's role in the instant suit.

## II.    LEGAL STANDARDS

### A.  THE 12(B)(6) STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for failure to state a claim upon which the court can grant relief.  Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss, the court must accept as true all of Plaintiff's well-pleaded factual allegations and must view them in the light most favorable to the nonmoving party.  *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).  To survive a motion to dismiss, the complaint must include "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

The court need only evaluate allegations "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

*Id.; see also Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010).  Further, the court is not required to accept conclusions of law or the asserted application of law to the alleged facts.  *Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994).  Following these principles, the Court considers whether the facts "plausibly give rise to an entitlement to relief." *Barrett v. Orman*, 373 F. App'x 823, 825 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

### B.  THE IDEA

The IDEA seeks "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment and independent living."  20 U.S.C. § 1400(d)(1)(A).  Within New Mexico, although the SEA is responsible "for implementing the IDEA and policing IDEA compliance," the LEA is "given primary responsibility for overseeing the actual provision of special education services to disabled children."  *Ellenberg v. New Mexico Military Institute*, 478 F.3d 1262, 1269 (10th Cir. 2007) (internal citations and quotations omitted) ("*Ellenberg I*").  "Should an LEA … prove unable to establish and maintain programs of free appropriate public education in compliance with IDEA, the SEA must provide special education and related services directly to disabled children.  *Id.* (internal citations and quotations omitted).  To determine whether the SEA must directly provide a student a FAPE when an LEA is not providing one, the Tenth Circuit looks to 20 U.S.C § 1413(g).  *See Chavez ex rel. M.C. v. N.M. Pub. Educ. Dept.*, 621 F.3d 1275, 1284-85 (10th

Cir. 2010).  Section 1413(g) provides:

> (1) In general
>
> A State educational agency shall use the payments that would otherwise
> have been available to a local educational agency or to a State agency to
> provide special education and related services directly to children with
> disabilities residing in the area served by that local educational agency, or
> for whom that State agency is responsible, if the State educational agency
> **determines** that the local educational agency or State agency, as the case
> may be—
>
>> (A) has not provided the information needed to establish the eligibility
>> of such local educational agency or State agency under this section;
>> (B) is unable to establish and maintain programs of free appropriate
>> public education that meet the requirements of subsection (a);
>> (C) is unable or unwilling to be consolidated with 1 or more local
>> educational agencies in order to establish and maintain such programs;
>> or
>> (D) has 1 or more children with disabilities who can best be served by
>> a regional or State program or service delivery system designed to
>> meet the needs of such children.
>
> (2) Manner and location of education and services
>
> The State educational agency may provide special education and related
> services under paragraph (1) in such manner and at such locations
> (including regional or State centers) as the State educational agency
> considers appropriate. Such education and services shall be provided in
> accordance with this subchapter.

20 U.S.C. § 1413(g) (2016) (emphasis added).  In *Chavez*, the court assumed without

deciding that "determines" means "finds out."  *Id*. at 1285.  Moreover, the *Chavez* court

reminded the lower courts that, for IDEA "procedures to work, they must be given

time: the IDEA does not provide 'immediate relief[,]" but cautioned, "[w]e do not,

however, intend to signal state agencies that they may routinely rely on procedural

requirements to insulate them from all liability[] where the statutory remedies have run off the rails."  *Chavez*, 621 F.3d at 1287, 1290.

## C.  SECTION 504 OF THE REHABILITATION ACT

The Rehabilitation Act "requires schools to give all students with disabilities equal access to ensure those children receive a free and appropriate public education." *KG by and through Christine C. v. Santa Fe Pub. Sch. Dist.*, 2013 WL 12330111, at *3 (D.N.M. May 17, 2013) (slip copy) (internal quotations omitted).  Section 504 states, in relevant part,

> No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ...
> For the purposes of this section, the term "program or activity" means all of the operations of—
> > (2) (A) a college, university, or ...
> > > (B) a local educational agency...

29 U.S.C. §§ 794(a)-(b) (2016).  "[W]hile Section 504 and the IDEA both provide certain forms of relief for individuals with disabilities, they have separate purposes.  Section 504 provides relief from discrimination…but the IDEA provides relief from inappropriate educational placement decisions, regardless of discrimination."  *Ellenberg v. N.M. Military Institute*, 572 F.3d 815, 821-22 (10th Cir. 2009) ("*Ellenberg II*").

### III.    FACT SUMMARY

The Court finds the following facts relevant for the purposes of Defendant's

Motion to Dismiss:

1.  V.S. is a twelve-year-old nonspeaking student with autism living in Silver City, New

    Mexico.  He is qualified to receive services under the IDEA through an

    Individualized Education Plan ("IEP") at SCS.  *Doc. 1* at 6-8.

2.  During the 2016-2017 school year, SCS placed V.S. on a shortened school day/week

    schedule and required Plaintiff to attend with him.  *Id.* at 8, 17.

3.  In December 2017, the LEA created an IEP for V.S. that provided solely homebound

    educational services, because SCS did not have a qualified special education teacher,

    Plaintiff could not attend school with V.S., and there was inadequate staff to

    accommodate V.S.  *Id.* at 8.

4.  In February 2018, SCS disenrolled V.S. from school.  *Id.*

5.  Plaintiff requested an IDEA administrative due process hearing on April 19, 2018,

    alleging that SCS and NMPED had denied V.S. a FAPE in violation of the IDEA.  *Id.*

    at 4-5.

6.  NMPED appointed a DPHO and filed a motion requesting that NMPED be

    dismissed for lack of jurisdiction.  *Id.* at 5.

7.  The DPHO dismissed Plaintiff's claims against NMPED but conducted an

    evidentiary hearing as to Plaintiff's claims against SCS.  *Id.*

8. The DPHO issued a final decision on September 12, 2018, ruling that SCS had denied

   V.S. a FAPE for two years and that V.S. was entitled to equitable remedy against the

   LEA. *Id.*

9. The LEA formulated a new IEP for V.S. in November 2018 and re-enrolled him

   within SCS. *Doc. 34* at 5. V.S. resumed attending school within SCS on January 22,

   2019. *Id.*

## IV. ANALYSIS

### A. THE COURT GRANTS DEFENDANT NMPED'S MOTION TO DISMISS ON PLAINTIFF'S IDEA CLAIM, BECAUSE THE STATE WAS NOT REQUIRED TO DIRECTLY PROVIDE A FAPE TO V.S.

In his Complaint, Plaintiff brings a claim under the IDEA against NMPED. *Doc. 1* at 12-16. Plaintiff specifically "seeks determination under the IDEA that NMPED denied V.S. a FAPE and is liable for equitable remedy including intervention and assistance to Silver Schools as well as all actions required to ensure availability of FAPE to V.S. in the present and going forward." *Id.* at 20. In addition, Plaintiff requests attorney's fees for the administrative due process hearing against NMPED "based on the necessity of exhaustion of administrative remedies in order to be able to pursue IDEA claims for V.S. in court." *Id.* at 19. In its Motion to Dismiss, NMPED contends that Plaintiff fails to state a claim against NMPED under the IDEA because NMPED did not provide direct services to V.S. and was not required to do so under 20 U.S.C. § 1413(g). *Doc. 12* at 3-7. The issues of whether Plaintiff states a viable claim under the

IDEA, and relatedly whether Plaintiff is entitled to attorney's fees, are now before the Court.

**1.** ***Chavez*** **governs Plaintiff's IDEA claim against the State.**

NMPED contends that *Chavez* mandates that an IDEA claim against it can only be sustained if the Plaintiff establishes that at least one of the prerequisites of 1413(g)(1) is met. *Doc. 24* at 2 (quoting *Chavez*, 621 F.3d at 1285-86). In other words, at this stage, Plaintiff must plausibly allege that the NMPED determined that, as to Plaintiff, the LEA "(A) has not provided the information needed to establish the eligibility of such local educational agency or State agency under this section; (B) is unable to establish and maintain programs of free appropriate public education[;] (C) is unable or unwilling to be consolidated with 1 or more local educational agencies in order to establish and maintain such programs; or (D) has 1 or more children with disabilities who can best be served by a regional or State program or service delivery system designed to meet the needs of such children." 20 U.S.C. § 1413(g)(1). In contrast, Plaintiff asserts that NMPED's reliance on *Chavez* and § 1413(g) is misguided, *see generally doc. 18*, and that he instead seeks relief under § 1412, specifically §1412(a)(1)(A) and §1412(a)(11), which give the SEA responsibility for ensuring all requirements of IDEA are met throughout the state.[2] *Id*. at 5. For the following reasons, the Court holds that, under *Chavez,*

---

[2] § 1412(a)(1)(A) reads,

Plaintiff's IDEA claim against NMPED fails if it does not establish a § 1413(g)(1)

prerequisite.

Given its import, a detailed summary of *Chavez* is worthwhile. *Chavez* concerned

the education of M.C., a high-functioning autistic student enrolled in the Tularosa

School System in New Mexico. 621 F.3d at 1277. Beginning in September 2003, M.C.

began to forcefully and successfully resist attending school. *Chavez v. Bd. of Educ. of*

*Tularosa Mun. Schs.*, 614 F. Supp. 2d 1184, 1190 (D.N.M. 2008), *aff'd in part*, 621 F.3d 1275

(2010). Plaintiffs, M.C.'s parents, requested an IEP meeting during which they asked

that the school district send a staff member to enter their home to help M.C. get to

school on a daily basis. *Id.* Tularosa Schools refused to modify M.C.'s IEP in such a

manner, and following M.C.'s continued lack of attendance, dropped M.C. from the

---

A State is eligible for assistance under this subchapter for a fiscal year if the State submits a plan that provides assurances to the Secretary that the State has in effect policies and procedures to ensure that the State meets each of the following conditions:
(1) Free appropriate public education
(A) In general
A free appropriate public education is available to all children with disabilities residing in the State between the ages of 3 and 21, inclusive, including children with disabilities who have been suspended or expelled from school.

In the same vein, § 1412(a)(11)(A), in relevant part, reads,
The State educational agency is responsible for ensuring that—
(i) the requirements of this subchapter are met;
(ii) all educational programs for children with disabilities in the State, including all such programs administered by any other State agency or local agency—
(I) are under the general supervision of individuals in the State who are responsible for educational programs for children with disabilities; and
(II) meet the educational standards of the State educational agency;
…
20 U.S.C.A. § 1412.

rolls.  *Id.*  Plaintiffs mailed a letter to NMPED, informing it that Tularosa Schools had refused to modify M.C.'s IEP and that M.C. was not attending school.  *Id.*  Plaintiffs additionally spoke with the Special Education Bureau parent liaison for NMPED by telephone and requested the forms for a due process hearing from NMPED.  *Id.*  The Special Education Bureau parent liaison subsequently discussed the matter with Tularosa Schools, providing it with caselaw in support of the school's approach.  *Id.*

In May 2004, Plaintiffs filed an administrative due-process hearing complaint against Tularosa Schools and NMPED, alleging that M.C. was denied a FAPE.  *Id.* at 1191.  The DPHO dismissed NMPED from the due process hearing, finding lack of jurisdiction, but conducted a hearing regarding the conduct of Tularosa Schools, and concluded that Tularosa Schools had denied M.C. a FAPE.  *Id.*  On appeal, the Administrative Appeals Officer ("AAO") affirmed that Tularosa Schools denied M.C. a FAPE during the 2003-2004 and 2004-2005 school years.  *Id.* at 1192.  In addition, the AAO concluded that Tularosa Schools had the ability to implement the remedy ordered.  *Id.* ("At this time, it appears that the local education agency can implement the remedy ordered by the administration appeal officer for the Student.").

Next, the *Chavez* plaintiffs filed a lawsuit against Tularosa Schools and NMPED in the District of New Mexico.  *Id.* at 1193.  In their Complaint, the plaintiffs asserted, *inter alia*, claims against the NMPED pursuant to the IDEA.  *Id.*  The remedies sought included "equitable relief, including reimbursement [for the parent's educational efforts

and] injunctive, declaratory and compensatory education, including systemic relief to ensure across New Mexico proper monitoring of children with autism and an adequate continuum of alternative placements for M.C. . . . and other children with autism." *Chavez*, 621 F.3d at 1279. The district court found that NMPED breached its duties under the IDEA to provide M.C. with FAPE for the 2003-2004 and 2004-2005 school years. *Chavez*, 614 F. Supp. 2d at 1202. The district court agreed with the premise that one of the prerequisites of § 1413(g)(1) must be met to establish NMPED's IDEA liability. *Id*. at 1206-13.

However, the district court explained that § 1413(g) "must be understood broadly so that it harmonizes with § 1412[,]" which centralizes "through the SEAs, responsibility for the public education of children with disabilities in the states." *Id*. at 1206-08. The district court agreed that § 1412 supported the idea that "where the LEA either cannot or will not provide FAPE to a child, then the child will 'best be served' by having a state or regional center provide services." *Id*. at 1207 (quoting *Doe by Gonzales v. Maher*, 793 F.2d 1470, 1491-92 (9th Cir. 1985)). With a permissive approach to the satisfaction of the § 1413(g)(1) prerequisites, it held that the facts satisfied at least one of them. Consequently, the district court held that NMPED violated the IDEA for failing to provide direct services to M.C. *Id*. at 1212-13. Both parties thereafter appealed the decision to the Tenth Circuit. *Chavez*, 621 F.3d at 1275.

The Tenth Circuit reversed, holding that the district court erred by holding

NMPED liable for Tularosa Schools' failure to provide M.C. a FAPE. *Id.* at 1283. When addressing plaintiff's IDEA claims against NMPED, the Tenth Circuit reasoned that "we proceed by construing the statute that addresses whether an SEA must directly provide a student a FAPE when the LEA is not providing one." *Id.* at 1284-85. That statute was § 1413(g) with its four alternative prerequisites.[3] *Id.* at 1285. Moreover, finding the district court's textual analysis at least "plausible," the Tenth Circuit "assume[d] without deciding that 'determining' [under § 1413(g)] means 'finding out.'" *Id.* at 1285. However, the Tenth Circuit found that the facts did not satisfy any of the § 1413(g) prerequisites for triggering the SEA intervention requirement. *Id.* at 1286. Particularly, the court held that NMPED "was not on notice of [Tularosa Schools'] non-compliance [with the IDEA] such that it should have attempted to take over education for the LEA without allowing the structured evidentiary hearings provided by the Act to run their course." *Id.* at 1289. Without defining the precise confines of the notice requirement, the court stated, "'notice' derives from something more than what occurred here-initial bits of information provided well before recourse to the administrative process." *Id.* The court therefore emphasized that the administrative procedures put in place by the state of New Mexico must be allowed to run their course before the SEA would be

---

[3] When the Tenth Circuit decided *Chavez*, the relevant prerequisites fell within §1413(h). *Chavez*, 621 F.3d at 1286. As a result, *Chavez* refers to §1413(h) as the applicable provision. *Id.* (quoting §1413 (h)(2000)). However, §1413, amended on October 1, 2016, now contains the prerequisites within subsection (g). *See* 20 U.S.C §1413 (2016). However, to avoid confusion and because the prerequisites are identical, the Court refers to the applicable section as §1413(g) throughout this Order.

required to intervene, and that state intervention following the administrative decision-making process was not appropriate here, where the DPHO found that the LEA could properly implement the remedy ordered. *Id.* at 1287.

Plaintiff makes several arguments in an effort to deny the applicability of *Chavez* and its dictate that a § 1413(g)(1) prerequisite be met before the NMPED can be liable under the IDEA. The attempts to distinguish *Chavez* are unpersuasive.

First, Plaintiff contends that *Chavez* is distinguishable because it "was decided in the framework of parents' claims against the SEA under 20 U.S.C. § 1413(g), rather than 20 U.S.C. § 1412(a)(1)(A) and 1412(a)(11), the general supervision requirements at issue in this case." *Doc. 18* at 7. However, a comparison between the instant case and the complaint and record in *Chavez* does not support such a clear distinction. As here, the complaint in *Chavez* included numerous allegations that NMPED, as the SEA, was failing in its supervisory role. *See* First Amended Complaint (*doc. 5*), *Chavez, et al. v. New Mexico Pub. Educ. Dept.*, No. 1:05-cv-00380 JB/CG (D.N.M. May 2, 2005) at ¶ 34, 36-39, 48-52, 54-56. These allegations included claims that insufficient numbers of autistic students statewide were receiving the special education appropriate to them, that "NMPED knew or should have known that its school districts, particularly in rural areas of New Mexico, lacked trained staff, programming, or continuum of alternative placements sufficient to provide FAPE to students who qualified for receipt of special education on the basis of the disability of autism[,]" that NMPED lacked any system to

track whether autistic children were attending school and receiving FAPE, and that NMPED lacked a system for monitoring whether the school districts were capable of providing FAPE to autistic children. *Id.* When arguing that these failures violated the IDEA, the *Chavez* plaintiffs often cited to the supervisory provision of § 1412. *See, e.g.*, Plaintiff's Motion to Alter (*doc. 97*), *Chavez, et al. v. New Mexico Pub. Educ. Dept.*, No. 1:05-cv-00380 JB/CG (D.N.M. Oct. 30, 2006) at 5, 9; Plaintiff's Supplemental IDEA Brief (*doc. 173*), *Chavez, et al. v. New Mexico Pub. Educ. Dept.*, No. 1:05-cv-00380 JB/CG (D.N.M. Oct. 30, 2008) at 4-5, 9. Furthermore, the *Chavez* plaintiffs sought systemic relief directed at NMPED, which would be primarily justified upon an enforcement of its supervisory obligations under the IDEA. *See, e.g.*, *Chavez*, 614 F. Supp. 2d at 1214-15 (plaintiffs requesting a finding that NMPED "failed to ensure a continuum of alternative placements throughout the state" and a court "order [that] the NMPED … install a hotline, which parents of disabled children can call and notify the NMPED of LEA's failings or possible deprivations of FAPE"). For its part, the district court's opinion substantially relied upon § 1412, which it concluded "indicate[d] Congress' intent to centralize, through the SEAs, responsibility for the public education of children with disabilities in the states." *Chavez*, 614 F. Supp. 2d at 1207 (citation omitted). Given the obvious relevance in *Chavez* of the general supervisory responsibilities described in § 1412, the Court is unpersuaded that Plaintiff's perhaps heavier reliance on § 1412 in the instant case can avoid *Chavez*'s holding.

Second, Plaintiff contends that the circumstances at bar are distinct because SCS is unable to implement the remedy ordered by the DPHO, whereas the AAO in *Chavez* determined that Tularosa Schools could, in fact, implement the remedy. *Doc. 1* at 10 ("The remedy created by the DPHO decision relies on variables not within the control of the LEA, which lacks the capacity and the will to perform as assumed[.]"). However, the DPHO never made a finding that SCS was unable to apply the remedy ordered, here. Instead, as Plaintiff admits, the DPHO presumed the contrary, stating,

> It is the responsibility of the LEA [to obtain qualified special education teachers], and *if* it cannot meet the challenge of finding qualified instructors in rural southwest New Mexico, ***then the SEA's responsibility to remedy this failure under its supervision and monitoring mandates to oversee that students are provided FAPE.***

*Id.* at 13 (emphasis added). In other words, the DPHO premised NMPED's responsibility on a future and yet unsatisfied condition. Indeed, beyond indicating this future and conditional responsibility, the DPHO made no findings suggesting that SCS would be unable or unwilling to implement the remedy. Thus, the Court rejects this argument for distinguishing *Chavez* from the case at bar.

Finally, Plaintiff argues that application of § 1413(g), rather than § 1412, is inappropriate because Plaintiff does not seek monetary relief other than that related to the costs of the due process hearing. *Doc. 18* at 7-8. During oral argument, counsel for Plaintiff confirmed that Plaintiff does not seek relief that can be achieved through

money, other than reimbursements related to the due process hearing.  *Doc. 34* at 3.[4]

Plaintiff explains that he does not want the Court, via § 1413(g), to mandate "the SEA

[to] take funding from the LEA," but rather asks the Court to use the IDEA's general

supervision provisions, §1412(a)(1)(A) and §1412(a)(11), to address "*the SEA's failure(s)*

*to create and maintain a statewide infrastructure sufficient to meet the needs* of students with

autism[.]"  *Id*. at 7-8 (emphasis in original).  Indeed, Plaintiff wants this Court, under the

IDEA, to address the "*total absence of infrastructure in the state* to meet the complex

educational needs of students with autism, particularly those who live in rural and

remote areas of the state such as Silver City.  [Plaintiff seeks a remedy requiring the]

State [to] step in and create [a] solution so that LEAs in New Mexico have continuous

uninterrupted access to necessary training and support for special education staff to be

capable of meeting the needs of students with autism."  *Id*. at 8 (emphasis in original).

The fact that Plaintiff is seeking systemic and structural relief rather than a monetary

award does not mean that satisfying a § 1413(g)(1) prerequisite is not necessary under

*Chavez*.  In fact, where the equitable relief sought would so dramatically alter

educational funding across the state, the importance of § 1413(g) increases.

  In any event, the language of *Chavez* persuades this Court that proving a

---

[4] Because Plaintiff does not seek monetary relief here, he cannot, and does not, argue that the Court should overlook the "stringent requirements" of § 1413(g), based upon the Court's broad discretion, to determine whether it should "hold [the] SEA 'financially responsible for an LEA's failure to comply with its responsibilities.'"  *Pipkins v. Bd. of Educ. of Reserve Indep. Sch.*, 2013 WL 12329120, at *9 (D.N.M. Sep. 19, 2013) (quoting *Chavez*, 621 F.3d at 1289).

§1413(g)(1) prerequisite is the sole avenue by which a plaintiff can establish the liability

of an SEA under the IDEA.  In the instant case, "[f]or his IDEA claim against NMPED,

Plaintiff seeks decision that the SEA denied V.S. a FAPE and award of equitable

remedy."  *Doc. 1* at 19.  Similarly, in *Chavez*, the Tenth Circuit sought to answer whether

the "district court erred by holding NMPED liable for Tularosa's failure to provide M.C.

a FAPE."  *Chavez*, 621 F.3d at 1283.  Importantly, in addressing that question, the *Chavez*

court held that "we proceed by construing the statute that addresses whether an SEA

must directly provide a student a FAPE when the LEA is not providing one."  *Id*. at

1284-85.  Moreover, as its analysis of the same question continued, the *Chavez* court

explained,

> While we agree that it is apparent that the IDEA centralizes responsibility
> for assuring that the requirements of the Act are met in the SEA, this is not
> the end of the story.  20 U.S.C. § 1412[(a)](11) (2000) ("The [SEA] is
> responsible for ensuring that ... all educational programs for children with
> disabilities in the State, including all such programs administered by any
> other State or local agency ... meet the educational standards of the
> [SEA].");  *see* S.Rep. No. 168, 94th Cong., 1st Sess. 24 (1975) reprinted in
> (1975) U.S.C.C.A.N. 1425, 1448 ("The committee bill requires that the
> [SEA] be responsible for insuring that all requirements of the Act are
> carried out, that all education programs for handicapped children within
> the State, including all such programs administered by any other State or
> local agency, must meet State educational agency standards and be under
> the general supervision of persons responsible for education of
> handicapped children.").  As noted, the IDEA is primarily a funding
> statute and the SEA controls some of the purse strings.  Should the SEA
> decide that an LEA is not deserving of funding because it is failing its
> students with disabilities, the SEA may not, in furtherance of its ultimate
> responsibility for the education of children in the state, simply yank
> funding from an LEA without further ado.  *Cf.* § 1413([g])("A[n] [SEA]
> shall use the payments that would otherwise have been available to a[n]

> [LEA] ... if the [SEA] determines ...").  Instead, the SEA is required first to
> provide notice and a hearing to the LEA before it determines that it is
> failing to comply with a requirement of the Act. 20 U.S.C. § 1413(d)(1)
> (providing for notice and a hearing); § 1413(a)(3) (the LEA shall ensure
> that its personnel are appropriately and adequately prepared); *cf.* §
> 1232c(b)(2) (providing for notice and time for the LEA to show cause why
> the funding should not be suspended for failure to substantially comply
> with several IDEA requirements); 20 U.S.C. § 1412(a)(13)("The [SEA] will
> not make a final determination that a[n LEA] is not eligible for assistance
> under this subchapter without first affording that agency reasonable
> notice and an opportunity for a hearing.").

*Chavez*, 621 F.3d at 1287.  This language and *Chavez*'s method of analysis makes clear to

this Court that when a plaintiff seeks to hold an SEA liable under the IDEA for a failure

to provide a FAPE, he cannot merely point to the general supervisory responsibilities of

§ 1412, but must satisfy a §1413(g)(1) prerequisite.  *See also M.M. v. Lafayette Sch. Dist.*,

767 F.3d 842, 860 (9th Cir. 2014) (affirming the district court's holding that §1412(a) does

not provide for a private right of action, but rather only "discusses the policies and

procedures that a state is required to have in place in order for the state to be eligible for

assistance under the IDEA.").

    In consideration of the foregoing, the Court holds that Plaintiff's IDEA cause of

action against the state must sufficiently allege satisfaction of a §1413(g)(1) prerequisite.

> **2. Plaintiff fails to state a claim against NMPED under § 1413(g),
> because Plaintiff's Complaint does not allege facts indicating that
> NMPED was on notice that the LEA was failing to provide V.S. a
> FAPE.**

    The Court now must decide whether Plaintiff has alleged sufficient facts that

could establish satisfaction of one of the § 1413(g) prerequisites.  Section 1413(g)(1)

states,

> A State educational agency shall use the payments that would otherwise
> have been available to a local educational agency or to a State agency to
> provide special education and related services directly to children with
> disabilities residing in the area served by that local educational agency, or
> for whom that State agency is responsible, if the State educational agency
> **determines** that the local educational agency or State agency, as the case
> may be—
>> (A) has not provided the information needed to establish the eligibility
>> of such local educational agency or State agency under this section;
>> (B) is unable to establish and maintain programs of free appropriate
>> public education that meet the requirements of subsection (a);
>> (C) is unable or unwilling to be consolidated with 1 or more local
>> educational agencies in order to establish and maintain such programs;
>> or
>> (D) has 1 or more children with disabilities who can best be served by
>> a regional or State program or service delivery system designed to
>> meet the needs of such children.

20 U.S.C. § 1413(g)(1) (emphasis added). This Court, like the Tenth Circuit, will assume

without deciding that "determines" means "found out." *Chavez*, 621 F.3d at 1285. As in

*Chavez*, situations (A) and (C) are clearly not applicable. *Id*. at 1286. Thus, Plaintiff

must adequately allege that NMPED "found out" that (i) one or more students could

best be served by a state or regional program or (ii) SCS was unable to provide V.S. with

a FAPE.

In Plaintiff's Response, he points to only one fact to satisfy this knowledge or

notice requirement. Plaintiff argues that "from the point it receives a request for IDEA

due process against it, the SEA has notice of the child's inability to obtain FAPE." *Doc.

18* at 11. This solitary fact is wholly inadequate to satisfy the knowledge requirement

under *Chavez*. Otherwise, the *Chavez* result would have been very different given that the parents in that case had also filed an IDEA due process complaint against the LEA and NMPED. *See Chavez*, 621 F.3d at 1278-79. Notwithstanding this filing, the *Chavez* court held that "the SEA was not on notice of non-compliance such that it should have attempted to take over education for the LEA without allowing the structured evidentiary hearings provided by the Act to run their course." *Id*. at 1289. Indeed, the *Chavez* court came to this conclusion despite the existence of numerous facts, in addition to the filing of the due process complaint, which could have supported a finding of NMPED's notice. For example, the *Chavez* plaintiffs mailed a letter to NMPED, informing it that Tularosa Schools had refused to modify M.C.'s IEP and that M.C. was not attending school. *Id*. at 1278. They additionally spoke with the Special Education Bureau parent liaison for NMPED by telephone and requested the forms for a due process hearing from NMPED. *Id*. Moreover, the Special Education Bureau parent liaison subsequently discussed the matter with Tularosa Schools and provided it with caselaw in support of the school's approach. *Id*. Even with all these facts, the *Chavez* court held that NMPED had not "found out" that (i) one or more students could best be served by a state or regional program or (ii) the LEA was unable to provide the student with a FAPE. *Id*. at 1284-86.

While Plaintiff's Response did not argue other facts on the issue of notice, the Court has considered other potentially relevant facts included in the Complaint as well

as any proffered by Plaintiff's counsel at oral argument.[5]  Two factual assertions should be highlighted.  First, on September 12, 2018, the DPHO held that the LEA had failed to provide V.S. a FAPE.  *See doc. 27-1* at 207-11.  Second, Plaintiff's counsel argues that NMPED has the capacity to track individual students by number such that, when SCS disenrolled V.S., NMPED would have been on notice of the SCS's failure to provide a FAPE.  *Doc. 34* at 5.

With respect to the DPHO decision, as the Court noted above, the finding of SCS's failure to provide V.S. a FAPE did not notify NMPED that the SCS would not or could not do so in the future.  While the DPHO ordered SCS to make several remedial actions to ensure it provided V.S. a FAPE, she made no findings suggesting that SCS would be unable or unwilling to implement the remedy.  Moreover, it is undisputed that SCS never notified NMPED that SCS was unable to secure and retain licensed special education teachers or otherwise provide a FAPE to students such as V.S.  *See doc. 1* at 17.  Similarly, with respect to NMPED's ability to track disenrollment of students, knowledge of V.S.'s disenrollment would not have alerted NMPED that SCS was unable to provide V.S. a FAPE.  This conclusion is particularly true where, unlike in *Chavez*, V.S.'s parents had not contacted NMPED about their problems with SCS.

In conclusion, Plaintiff's Complaint, even if amended with facts proffered by

---

[5] During oral argument, the Court gave Plaintiff the opportunity to explain whether there exists any evidence, not included in the Complaint, that might indicate that NMPED was on notice that SCS was unable or unwilling to provide a FAPE to V.S.  *Doc. 34* at 5.

counsel at oral argument, does not sufficiently allege facts which would satisfy any of the § 1413(g)(1) prerequisites.

### 3. New Mexico statutory remedies have not run off the rails such that NMPED was otherwise required to directly provide a FAPE to V.S.

In its conclusion, the *Chavez* court reflected that "[t]his is a difficult and frustrating case, where we have sought to balance useful procedural requirements with the need for expedition." *Chavez*, 621 F.3d at 1290. Consequently, the court warned that it did "not, however, intend to signal state agencies that they may routinely rely on procedural requirements to insulate them from all liability, where the statutory remedies have run off the rails." *Id*. Plaintiff contends that this language should prevent NMPED from escaping IDEA liability in the instant case. *See doc. 18* at 9. The precise meaning of this language, let alone how the analysis employed in *Chavez* would be modified in the event of a complete remedial failure, is unclear. In any event, the Court finds that the remedies set forth in New Mexico have not "run off the rails" such that NMPED was otherwise required to intervene on V.S.'s behalf. First, New Mexico's statutory remedies, as a result of recent amendments, now more quickly address complaints than the remedies in place when *Chavez* was decided.[6] Second, New Mexico

---

[6] In fact, the Court in *Chavez* indicated that some of their concerns might have already been alleviated by recent amendments in New Mexico remedies:

> We are comforted somewhat by regulatory amendments that post-date the relevant authority in this case. The applicable regulations now state that the SEA must remedy any non-compliance identified under its monitoring obligations within one year. In addition, New Mexico has shortened its administrative process. Under the regulations in

has specifically created a state complaint procedure in which parents may file

complaints asserting that NMPED should be required to provide direct services to a

child because the LEA is unable to do so.[7]  However, Plaintiff did not take advantage of

this process, and claims without evidence that this system does not work well in New

Mexico.  *Doc. 34* at 3.  Plaintiff cannot claim systematic ineffectiveness without having

attempted to seek relief under the system and without any other supporting evidence.

Third, the New Mexico due process procedure led to the LEA delivering a remedy to

V.S.  Specifically, following Plaintiff's initial request for a hearing in April 2018, a

DPHO promptly held a hearing, decided in Plaintiff's favor and ordered the LEA to

implement a remedy on September 12, 2018.[8]  *Doc. 1* at 4-5.  The LEA soon thereafter

conducted a series of meetings, formulated a new IEP for V.S., and had him re-enrolled

---

place during the Chavez's administrative review, a request for an appeal needed to be
transmitted within 30 days of the hearing-officer's decision and a decision on that appeal
needed to be issued 30 days thereafter.  Now a civil complaint must be filed within 30
days of a due-process-hearing officer's decision, without a second-level administrative
review.

621 F.3d at 1290 n.8 (internal citations omitted).

[7] As *Chavez* explains,

Effective June 2007…New Mexico amended its administrative code to exclude from the
IDEA administrative process "claims asserting that the department should be required to
provide direct services to a child with a disability pursuant to 20 USC Sec. 1413(g)(1) and
34 CFR Sec. 300.227 because the responsible public agency is unable to establish and
maintain appropriate programs of FAPE, or that the department has failed to adequately
perform its duty of general supervision over educational programs for children with
disabilities in New Mexico" and instead directed parties with those claims to proceed
under the state-complaint procedures.  NMAC § 6.31.2.13(I)(3)(d) (2010); 6.31.2.7(B)(3)
(department is defined as the "public education department"); N.M. Pub. Ed. Dept.,
Notice of Rule Making and Proposed Rules, 2007 N.M. REG TEXT 65879 (Feb. 28, 2007).

*Chavez*, 621 F.3d at 1283 n.5.

[8] Notably, the DPHO made no finding that the LEA would be unable to implement the remedy ordered.

in school and attending classes by January 22, 2019.  *Doc. 34* at 5.  Although the Court

acknowledges that speedy relief may be particularly important to remove obstacles to

the receipt of childhood education, Plaintiff cannot sidestep functional IDEA procedure

when he does not receive "immediate relief," but must allow the process to run its

course as designed.  *Chavez*, 621 F.3d at 1287.  Here, the remedies achieved the objective

of providing V.S. with a FAPE within one year of Plaintiff's initial due process request.

In short, the Court cannot agree that there exists an "obvious failure of the system" such

that NMPED was required to act despite the lack of a § 1413(g)(1) prerequisite.  *Id*. at

1290.

### 4. Plaintiff fails to state an IDEA claim against NMPED and thus is not entitled to an award of attorney's fees under that statute.

Based on the foregoing, the Court finds that Plaintiff's Complaint fails to state a

claim under the IDEA upon which relief may be granted against NMPED.  Moreover,

permitting an amendment based on the additional facts proffered by counsel would be

futile.   This conclusion also resolves the attorney fee request against NMPED under the

IDEA.

In his Complaint, Plaintiff seeks an award of reasonable attorney's fees pursuant

to the IDEA for the administrative due process proceeding as well as for this lawsuit.

*Doc. 1* at 20.  Under 20 U.S.C. § 1415(i)(3)(B)(i), reasonable attorney's fees may be

awarded to a prevailing parent of a child with a disability incurred as a result of

administrative and court proceedings.  *See M.S. ex rel. J.S. v. Utah Schs. for the Deaf and*

*Blind*, 822 F.3d 1128, 1136 (10th Cir. 2016).  Plaintiff has not prevailed against NMPED

under the IDEA in the administrative proceedings or before this Court.  Consequently,

the Court denies Plaintiff's request for attorney's fees against NMPED under the IDEA.[9]

### B. DEFENDANT NMPED HAS NOT ESTABLISHED THAT PLAINTIFF'S CLAIM AGAINST IT UNDER SECTION 504 SHOULD BE DISMISSED.

In his Complaint, Plaintiff brings a claim against NMPED under Section 504 of

the Rehabilitation Act.  *Doc. 1* at 16-19.  In its Motion to Dismiss, NMPED asserts that

this claim "fails because the claim is educational in nature, relates to student's FAPE,

and must be brought under the IDEA."  *Doc. 12* at 9.  NMPED's argument is flawed.

The reach of the Rehabilitation Act "is broader and less stringent than the IDEA."

*KG*, 2013 WL 12330111, at *3.  The Rehabilitation Act "requires schools to give all

students with disabilities 'equal access' to ensure those children receive a free and

appropriate public education.  The IDEA applies to a narrower subset of disabled

children and requires specific services consistent with the individualized program

designed for that particular child.  *Id*. (citation omitted).  As the Tenth Circuit has

explained, "while Section 504 and the IDEA both provide certain forms of relief for

individuals with disabilities, they have separate purposes.  Section 504 provides relief

from discrimination…but the IDEA provides relief from inappropriate educational

placement decisions, regardless of discrimination[.]"  *Ellenberg II*, 572 F.3d at 821-22.

---

[9] The Court expresses no opinion on Plaintiff's request for attorney's fees for either the administrative or judicial proceedings if he were to prevail under a Section 504 theory of liability.

Consequently, contrary to NMPED's argument, "our precedent does not hold that a party's discrimination claims under the [Rehabilitation Act] … must automatically be dismissed if an IDEA claim fails." *Ellenberg I*, 478 F.3d at 1281.

Nonetheless, the failure of an IDEA claim can prove fatal, as a matter of law, to a Rehabilitation Act claim. If a court determines that a student was not denied a FAPE under the IDEA and the Rehabilitation Act claim is based upon the same alleged denial, then the Rehabilitation Act claim also fails. *See Urban v. Jefferson Cty. Sch. Dist.*, 89 F.3d 720, 728 (10th Cir. 1996); *see also Couture v. Bd. of Educ. of Albuquerque Public Schools*, 2009 WL 10708112, at *7-*8 (D.N.M. Mar. 30, 2009). Importantly, this conclusion follows only in instances in which the Court finds that student was not denied a FAPE. However, the Court has not determined that V.S. was not denied a FAPE, here. In fact, the DPHO's finding that V.S. was denied a FAPE is undisputed.

The only IDEA question before the Court in Defendant's motion was whether NMPED (the SEA) could be liable for that denial based upon Plaintiff's allegations. The conclusion that it could not, due to the peculiar nature of the IDEA, does not resolve the discrimination question under the Rehabilitation Act. As such, the Court is unpersuaded that Plaintiff's Rehabilitation Act claim "fails because the claim is

educational in nature, relates to student's FAPE, and must be brought under the IDEA."[10]

## V.    CONCLUSION

In consideration of the foregoing, the Court hereby GRANTS Defendant NMPED's Motion to Dismiss (*doc. 12*) in part and DENIES it in part.  Plaintiff's IDEA claim against NMPED is DISMISSED WITH PREJUDICE.  Plaintiff's Rehabilitation Act claim against NMPED may proceed.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**

---

[10] In passing, Defendant criticizes the quality of Plaintiff's allegations in support of the Rehabilitation Act claim noting that to "prove discrimination in the education context, 'something more than a mere failure to provide the FAPE required by the IDEA must be shown.'"  *Doc. 12* at 10 (citation omitted).  To the extent that Defendant was arguing under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) that Plaintiff did not allege sufficient facts for a plausible Rehabilitation Act claim, the argument is insufficiently made to merit addressing it and the Court expresses no opinion on it.